James E. Cecchi
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, New Jersey 07068
(973) 994-1700

Sanford P. Dumain
Clifford S. Goodstein
Andrei V. Rado
William B. Scoville, Jr.
Roland W. Riggs IV
Gary Snitow
MILBERG LLP
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
(212) 594-5300

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| PLATINUM PARTNERS VALUE ARBITRAGE FUND, L.P., CENTURION STRUCTURED GROWTH LLC, and LEVEL 3 CAPITAL FUND LP,<br><br>Plaintiffs,<br><br>vs.<br><br>TD BANK, N.A.,<br><br>Defendant. | Civil Action No.<br><br><br><br>**COMPLAINT and**<br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Platinum Partners Value Arbitrage Fund, L.P. ("Platinum"), Centurion Structured Growth LLC ("Centurion"), and Level 3 Capital Fund LP ("Level 3") (collectively, "Plaintiffs") bring this action upon knowledge as to themselves, their own acts, and the acts of their employees, and otherwise upon information and belief, including information gained through an investigation of their counsel, and allege as follows:

## PRELIMINARY STATEMENT

1. This action arises out of Defendant TD Bank's misrepresentations, which it made to Plaintiffs to further a $1.2 billion Ponzi scheme perpetrated by Scott Rothstein. Rothstein was an attorney that scammed lenders and investors by selling account receivables of settlements that, it turned out, did not exist.

2. Plaintiffs Platinum, Centurion, and Level 3 were induced to unwittingly lend millions to an entity that bought Rothstein's phantom account receivables, and to allow loans already made to that entity to remain outstanding. They were so induced by representations made to them by TD Bank and its employees. As part of their due diligence, Plaintiffs sent a representative to the TD Bank Florida branch that purportedly housed Rothstein's settlement funds. Plaintiffs were given TD Bank statements by TD Bank representatives showing that the accounts were funded with hundreds of millions of dollars. In fact, the accounts held at most a fraction of the amounts represented.

3. On October 27, 2009, the scheme was revealed publicly, to significant media coverage. Scott Rothstein pleaded guilty to criminal racketeering, fraud and money laundering charges. Rothstein and his firm's creditors have filed a petition for involuntary bankruptcy in Florida, and Rothstein's firm has consented to an order for relief in that case.[1]

4. Plaintiffs incurred, and may continue to incur, losses as a result of TD Bank's conduct in excess of $100 million. Plaintiffs bring this action to recover that money.

## PARTIES

5. Plaintiff Platinum Partners Value Arbitrage Fund, L.P. is a Delaware limited partnership with its principal place of business in the state of New York. On or about June 26,

---

[1] The bankruptcy proceeding is *In re Rothstein Rosenfeldt Adler, P.A.,* 09-34791-RBR (S.D. Fl).

2008, Platinum executed the first of several credit agreements with non-party Banyon Investments, LLC, in which it agreed to loan Banyon Investments money to be invested in what Plaintiff later discovered was a Ponzi scheme.

6.  Plaintiff Level 3 Capital Fund LP is a Delaware limited partnership with its principal place of business in the state of New York.  On or about November 3, 2008, Level 3 entered into a Credit Agreement with Banyon Resources, LLC.

7.  Plaintiff Centurion Structured Growth LLC is a Delaware limited liability company with its principal place of business in the state of New York.  On or about April 3, 2008, Centurion entered into a Credit Agreement with Banyon Funding, LLC.

8.  Defendant TD Bank, N.A. ("TD Bank") is a subsidiary of Toronto Dominion Bank, its principal place of business in New Jersey and with offices located, among other places, at 47 Eisenhower Parkway Roseland, New Jersey.  It is successor-in-interest to Commerce Bank, which it acquired in March of 2008.  As alleged more fully below, TD Bank showed Plaintiffs materially false and misleading account statements purportedly containing the Rothstein settlement money.

**RELEVANT NON-PARTIES**

9.  Scott Rothstein, at one time a practicing attorney in Florida, was the principal architect of the Ponzi scheme.  Rothstein has been sentenced to 50 years in prison.

10.  Rothstein, Rosenfeldt, Adler, P.A. ("RRA") was Rothstein's law firm, and was used by him to perpetrate his Ponzi scheme.  It has entered receivership.

11.  Banyon Investments, LLC, Banyon Resources, LLC, and Banyon Funding, LLC (collectively, "Banyon" or "the Banyon entities"), were at all relevant times Nevada limited liability companies.  The Banyon entities acted as "feeder funds" to Rothstein's Ponzi scheme.

- 4 -

That is, their primary purpose was to attract unwitting lenders and/or investors to supply the funds needed to fuel Rothstein's Ponzi scheme.

12. Jennifer Kerstetter is a resident of Florida. At all times relevant herein, Kerstetter was an Assistant Manager at TD Bank acting in the scope of her employment. Kerstetter made material misrepresentations to a representative of Plaintiffs regarding the amount of money contained in Rothstein's accounts at TD Bank.

13. Roseanne Caretsky is a resident of Florida. At all times relevant herein, Caretsky was an Assistant Vice President of TD Bank, and branch manager of TD Bank's Weston, Florida, branch, acting in the scope of her employment. Caretsky made material misrepresentations to a representative of Plaintiffs regarding the amount of money contained in Rothstein's accounts at TD Bank.

14. Jose Garces is a resident of Florida. At all times relevant herein, Garces was an Assistant Vice President of TD Bank and the Store Manager of TD Bank's Deerfield, FL branch, acting in the scope of his employment. Garces made material misrepresentations to a representative of Plaintiffs regarding the amount of money contained in Rothstein's accounts at TD Bank.

**JURISDICTION AND VENUE**

15. This Court has jurisdiction over all causes of action asserted herein pursuant to 28 U.S.C. § 1332(a) because the claims of Plaintiffs exceed the sum or value of $75,000 and there is diversity of citizenship between all Plaintiffs and Defendant. Plaintiffs are citizens of the state of New York. Defendant is citizen of the state of New Jersey.

16. Venue is proper in this District under 28 U.S.C. § 1391(a)(1) and (2). Defendant conducts substantial business in this District and is headquartered in this District.

## FACTUAL ALLEGATIONS

**The Rothstein Ponzi Scheme**

17. In or before 2005, Scott Rothstein began operating a massive Ponzi scheme.[2]

18. Rothstein's scheme was predicated upon his career as an attorney. Rothstein told investors and/or lenders that his law firm represented plaintiffs in a large pipeline of cases that had or were about to settle. Rothstein represented to putative investors and/or lenders that the plaintiffs did not want to wait to receive the money, and would instead accept a lower lump sum immediately. "Advance cash for structured settlements" agreements are common, and numerous legitimate enterprises are in the business of paying a plaintiff a discounted lump sum now in return for a right to a structured settlement's income stream.

19. Rothstein further told potential investors and lenders that the settlements were confidential, and that he was precluded by the terms of the settlement agreements from revealing any information regarding the parties. Rothstein claimed that in many cases no complaint had yet been filed because many of the lawsuits were whistleblower suits, sexual harassment suits, and other types of litigation that would embarrass the defendants.

20. Investors and lenders were, however, able to seek some confirmation of Rothstein's claims in the form of account statements and other representations from TD Bank. Specifically, Rothstein told investors and lenders that the settlement funds were kept in his client escrow accounts at TD Bank. Investors and lenders verified this information through their own due diligence, including by going to TD Bank personally, and by reviewing documents provided by TD Bank and its employees. TD Bank's purportedly "independent" confirmation of

---

[2] Federal authorities alleged (and Rothstein pled guilty to) a scheme that began in 2005. *See U.S. v. Rothstein*, 09-60331 (S.D. Fl.) Dkt. 69. Rothstein's scam was well under way by 2008, when Plaintiffs were fraudulently induced into the relevant transactions.

Rothstein's claims thus induced potential investors and lenders, including Plaintiffs, to loan money to, and/or invest in, Rothstein and his cohorts, and to forego their legal remedies when those funds were not returned on schedule.

21.     In reality, while Rothstein occasionally did represent plaintiffs in lawsuits, there were no settlements.  More often, there were lawsuits at all.  Scott Rothstein and his co-conspirators used one investor's principal to pay the returns due to previous investors.  Thus, as investors' money came due, Rothstein and his conspirators were forced to seek more and more infusions of cash.

22.     Plaintiffs loaned money to Banyon, which used the funds to purchase Rothstein's bogus "settlements."

**TD Bank's False Representations**

23.     One problem faced by Rothstein and Banyon was that their representations were difficult to verify independently.  This is where TD Bank entered the picture.  Rothstein and his cohorts kept numerous accounts at TD Bank that as escrow accounts for the "clients" they claimed to represent.

24.     TD Bank represented on numerous occasions to Plaintiffs that RRA's Florida Bar Trust Accounts held substantial sums -- the settlement money that Banyon was purchasing with the money it borrowed from Plaintiffs.  These representations were made both orally at in-person meetings between a representative for Plaintiffs and representatives of TD Bank, and in writing. The representations substantiated Rothstein's story because, as detailed below, TD Bank vouched for the amounts in Rothstein's Trust Accounts.

25.     On several occasions, a representative for Plaintiffs traveled to Florida to verify that Rothstein's escrow accounts in fact had the money that Rothstein claimed.  On those occasions, TD Bank generated "account statements," that TD Bank, through its representatives,

gave to Plaintiffs' representative, or that TD Bank employees handed to Rothstein in the presence of Plaintiffs' representative. Those account statements purported to show the amount of funds in, and most recent transactions involving, several accounts purportedly held by Rothstein in trust for the settling plaintiffs. Such "statements" were also accompanied by cover letters signed by TD Bank employees, specifically including:

(a) An October 29, 2008, letter signed by TD Bank employee Roseanne Caretsky with statements that three RRA Trust accounts contained, respectively, $166,922,339, $40,125,685.14, and $348,229,463.21;

(b) A December 17, 2008, cover letter signed by TD Bank employee Jose Garces with statements that four RRA Trust accounts contained, respectively, $202,292,114.62, $12,640,660.40, $411,215,370.99, and $93,075,327.28;

(c) A February 18, 2009, cover letter signed by TD Bank employee Jennifer Kerstetter with statements that five RRA Trust Accounts contained, respectively, $101,020.00, $314,606,429.31, $26,293,333.96, $83,494,231.43, and $113,021,481.88;

(d) A March 20, 2009, cover letter signed by Kerstetter with statements that five RRA Trust Accounts contained, respectively, $104,211,711.22, $368,333,133.20, $110,331,563.13, $118,473.00, and $49,656,988.00; and

(e) An April 23, 2009, cover letter signed by Caretsky with statements that five RRA Trust Accounts contained, respectively, $195,089,266.13, $59,292,514.00, $467,471,708.68, $79,039,922.99, and $132,564,811.33.

26.     At the time these letters were signed, and at the time they and the accompanying statements were given to Plaintiffs' representative, TD Bank and its employees knew or should have known that none of the accounts referred to contained anywhere near the sums represented, or that if they did, that the money had only recently been transferred into those accounts (which should have been, but was not, reflected on the statements).

27.     During the operation of the Ponzi scheme, Rothstein and his co-conspirators had as many as 38 bank accounts with TD Bank, and moved literally hundreds of millions of dollars into and out of TD Bank.  Indeed, Rothstein's purported "funds" constituted more money than most bank branches have in total.

28.     TD Bank profited from Rothstein's activities, and TD Bank employees referred to Rothstein as a "VIP."

**Plaintiffs' Credit Agreements With Banyon**

29.     Banyon Investments, LLC entered into a Credit Agreement with Platinum on or about June 26, 2008.  Although the initial Credit Agreement provided for a credit limit of $50 million, that amount was revised upward to $100 million by an Omnibus Loan Document Modification and Reaffirmation Agreement on or about August 21, 2008, and revised again to $150 million by a Second Omnibus Loan Document Modification and Reaffirmation Agreement on or about September 25, 2008.

30.     Banyon Resources, LLC entered into a substantially similar Credit Agreement with Level 3 on or about November 3, 2008, with a credit line of $50 million.

31.     Banyon Funding, LLC entered into a substantially similar Credit Agreement with Centurion on or about April 3, 2008.

32.     In sum, the plan was for Plaintiffs to lend money to Banyon, which Banyon would use to purchase RRA's settlement accounts receivable.  The Agreements provided that each loan

to Banyon was to be made for the purchase of a particular settlement or settlement tranches, and that each purchase had to be pre-approved by Plaintiffs, after Plaintiffs had reviewed certain documents, defined as "Approved Purchase Documents."

33. One of the Approved Purchase Documents to be reviewed by Plaintiffs in each case was an Acknowledgment of Assignment/Purchase of Settlement Proceeds. That document sought to reassure Plaintiffs by referring to particular trust accounts held at TD Bank or Commerce Bank by account number, and stating those accounts held "the proceeds of the settlement of Confidential Case No.: _____," and that such proceeds "will be held exclusively for the [investor or the lender's assignee]." Absent TD Bank's false and misleading representations in the form of account statements, such assurances would have been meaningless.

34. Concurrently with the execution of the initial loan agreement, as well as with each subsequent loan modification (discussed *infra*), Banyon executed promissory notes to Plaintiffs in the maximum amount to be outstanding at any time, "or so much thereof as may be outstanding from time to time." Each note was to be repaid "in accordance with the terms and provisions" of the Credit Agreement.

35. Plaintiffs loaned Banyon substantial sums pursuant to their respective credit agreements. The amounts loaned to Banyon under the Credit Agreements are as follows:

| Date | Amount | Plaintiff |
|---|---|---|
| 6/27/08 | (18,553,335.30) | Platinum |
| 7/31/08 | (22,060,896.30) | Platinum |
| 8/22/08 | (38,148,448.20) | Platinum |
| 9/25/08 | (34,744,133.70) | Platinum |
| 11/3/08 | (32,850,000.00) | Platinum |
| 11/3/08 | (36,990,000.00) | Platinum |
| 1/2/09 | (35,190,000.00) | Platinum |
| 2/3/09 | (21,510,000.00) | Platinum |
| 3/2/09 | (27,360,000.00) | Platinum |
| 4/1/09 | (17,820,000.00) | Platinum |
| **Platinum** | **(285,226,813.50)** | |

**total**

| | | |
|---|---|---|
| 10/30/08 | (3,780,000.00) | Centurion |
| 10/30/08 | (1,350,000.00) | Centurion |
| 10/30/08 | (1,305,000.00) | Centurion |
| 10/30/08 | (1,125,000.00) | Centurion |
| 10/30/08 | (1,080,000.00) | Centurion |
| 10/30/08 | (787,500.00) | Centurion |
| 10/30/08 | (774,000.00) | Centurion |
| 10/30/08 | (774,000.00) | Centurion |
| 10/30/08 | (720,000.00) | Centurion |
| 10/30/08 | (360,000.00) | Centurion |
| 11/28/08 | (4,320,000.00) | Centurion |
| 11/28/08 | (4,320,000.00) | Centurion |
| 11/28/08 | (630,000.00) | Centurion |
| 11/28/08 | (450,000.00) | Centurion |
| 11/28/08 | (405,000.00) | Centurion |
| 11/28/08 | (253,800.00) | Centurion |
| 1/2/09 | (3,870,000.00) | Centurion |
| 1/2/09 | (2,610,000.00) | Centurion |
| 1/2/09 | (1,980,000.00) | Centurion |
| 1/2/09 | (1,170,000.00) | Centurion |
| 1/26/09 | (4,680,000.00) | Centurion |
| 1/26/09 | (1,980,000.00) | Centurion |
| 1/26/09 | (1,440,000.00) | Centurion |
| 1/26/09 | (891,000.00) | Centurion |
| 1/26/09 | (495,000.00) | Centurion |
| 2/24/09 | (1,980,000.00) | Centurion |
| 2/24/09 | (1,170,000.00) | Centurion |
| 2/26/09 | (1,620,000.00) | Centurion |
| 3/17/09 | (1,980,000.00) | Centurion |
| 3/20/09 | (1,980,000.00) | Centurion |
| **Centurion Total** | **(50,280,300.00)** | |
| 11/4/08 | (10,386,000.00) | Level 3 |
| 11/21/08 | (2,700,000.00) | Level 3 |
| 11/28/08 | (2,610,000.00) | Level 3 |
| 12/26/08 | (2,340,000.00) | Level 3 |
| 1/16/09 | (652,500.00) | Level 3 |
| 2/2/09 | (1,575,000.00) | Level 3 |
| 2/19/09 | (2,970,000.00) | Level 3 |
| 3/6/09 | (2,430,000.00) | Level 3 |
| 3/17/09 | (3,060,000.00) | Level 3 |
| 3/23/09 | (1,170,000.00) | Level 3 |
| **Level 3** | **(29,893,500.00)** | |

**Total**

36.    As shown, Platinum loaned Banyon over $285 million, Centurion loaned Banyon over $50 million, and Level 3 loaned Banyon over $29 million.  Banyon did repay some of the money it owed to Plaintiffs, but pay the full amounts.  Nevertheless, in reliance on the misrepresentations made by TD Bank regarding the sums purportedly in Rothstein's trust accounts, Plaintiffs continued to approve Banyon's purchases of bogus settlements.  Plaintiffs suffered, and may continue to suffer, significant damages in excess of $100 million due to loans they made in reliance on TD Bank's misrepresentations.

**The Aftermath**

37.    Rothstein's Ponzi scheme eventually collapsed.   As more and more investors/lenders began to demand their returns and principal, Rothstein and his cohorts were unable to bring in enough new money to keep the scam going.  In October of 2009, things finally came to a head.

38.    On October 17, 2009, Rothstein sent a firm-wide email asking for research for a "client" regarding foreign extradition treaties, and specifically for any countries that did not have such treaties with either the United States or Israel.

39.    In late October, Rothstein and his law firm began to default on the structured payments they owed.

40.    On October 26, 2009, Richard Pearson, an investor who had put $18,000,000 into the Ponzi scheme, confronted Rothstein and Spinosa, a TD Bank employee who was integral to the Ponzi scheme.  The two were inside a restaurant together in Bova, Florida.  Pearson demanded to know why he had not received two scheduled payments due the week before.  The encounter unnerved Spinosa.

41.     Immediately thereafter, Rothstein drained all of RRA's accounts at TD Bank. The next day, October 27, 2009, Rothstein wired $16,000,000 to a Moroccan bank, then boarded a private jet to Morocco.  Even that, however, did not stop the bleeding.  Over the next few days, even more money flowed out of the RRA accounts at TD Bank.

42.     By October 30, 2009, it was clear that the money was gone.  On November 4, 2009, an emergency receiver was appointed for Rothstein's law firm, RRA.[3]

**FIRST COUNT**
**(Fraud)**

43.     Plaintiffs repeat the allegations above as if set forth fully herein.

44.     Defendant TD Bank represented to Plaintiffs that certain RRA accounts contained certain sums at certain times, as alleged paragraphs 23 - 28 above.

45.     At the time of these representations, TD Bank knew, as did the TD Bank employees making the representations, that these statements were false.  The RRA accounts at issue did not contain the funds represented, and any funds those accounts did contain could be (and ultimately were) transferred out of those accounts.

46.     TD Bank, and the TD Bank employees making the representations, intended that Plaintiffs rely on those representations.  TD Bank knew that Plaintiffs' agents personally travelled to the Weston, Florida TD Bank branch to check on the amount of cash in RRA's TD Bank accounts as part of Plaintiffs' due diligence into RRA's accounts receivable business.

47.     Plaintiffs reasonably relied on TD Bank's representations in determining whether to lend money to Banyon Investments and to allow the loans to remain outstanding.

---

[3]     Rothstein returned to the United States on November 3, 2009 and finally confessed to his crimes.  He is currently serving a 50 year sentence.

48. By virtue of their reliance on TD Bank's representations, Plaintiffs have been damaged.

## SECOND COUNT
### (Aiding And Abetting Fraud)

49. Plaintiffs repeat the allegations above as if set forth fully herein.

50. It is undisputed that Scott Rothstein's scheme was a fraud. Rothstein pleaded guilty to criminal fraud charges, among other charges.

51. Defendant was aware of a fraud at the time it was occurring because it had access to, and control of, the funds in the RRA accounts at TD Bank, and knew that the amounts reflected in the account statements shown to Plaintiffs were inaccurate.

52. Defendant's representations to Plaintiffs, and/or its assistance to Rothstein in disguising his activity, constitute substantial assistance in the fraud.

53. Plaintiffs have been damaged by the fraud.

## THIRD COUNT
### (Negligent Misrepresentation)

54. Plaintiffs repeat the allegations above as if set forth fully herein.

55. TD Bank owed a duty of care to Plaintiffs, knew that Plaintiffs would rely on RRA account statements given by TD Bank agents to Plaintiffs' agents, and received fees for its role in Rothstein's scam. TD Bank knew Plaintiffs had travelled to the Florida branch to perform due diligence on RRA's business and that checking the balances of RRA's settlement trust accounts at TD Bank was critical to such due diligence.

56. TD Bank was, at a minimum, negligent in not knowing the falsity of its statements.

57. Plaintiffs' reliance on those statements was both reasonable and foreseeable.

58. Plaintiffs were injured by their reliance on TD Bank's statements.

- 14 -

**WHEREFORE,** Plaintiffs demand judgment against defendant in the form of an order as follows:

    A.    Awarding Plaintiffs compensatory damages and pre-judgment and post-judgment interest;

    B.    Awarding such other and further relief as the Court may deem equitable and just.

    CARELLA, BYRNE, CECCHI,
    OLSTEIN, BRODY & AGNELLO, P.C.
    Attorneys for Plaintiffs


By:   /s/ James E. Cecchi
      JAMES E. CECCHI

Dated: December 13, 2010

Sanford P. Dumain
Clifford S. Goodstein
Andrei V. Rado
William B. Scoville, Jr.
Roland W. Riggs IV
Gary Snitow
MILBERG LLP
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
(212) 594-5300

- 15 -

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

                                          CARELLA, BYRNE, CECCHI,
                                          OLSTEIN, BRODY & AGNELLO, P.C.
                                          Attorneys for Plaintiffs

                                  By:    /s/ James E. Cecchi
                                            JAMES E. CECCHI

Dated: December 13, 2010

Sanford P. Dumain
Clifford S. Goodstein
Andrei V. Rado
William B. Scoville, Jr.
Roland W. Riggs IV
Gary Snitow
MILBERG LLP
One Pennsylvania Plaza, 49th Floor
New York, New York 10119
(212) 594-5300