NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| PLATINUM PARTNERS VALUE ARBITRAGE FUND, L.P., CENTURION STRUCTURED GROWTH, LLC, AND LEVEL 3 CAPITAL FUND, L.P., | Civil Action No. 10-6457 (ES) |
| Plaintiffs, | OPINION |
| v. | |
| TD BANK, N.A., | |
| Defendant. | |

**FALK, U.S.M.J.**

Before the Court is the motion of Defendant TD Bank, N.A. ("Defendant") to transfer venue to the Southern District of Florida pursuant to 28 U.S.C. § 1404(a). [CM/ECF No. 11.] The motion is opposed. The Honorable Esther Salas, U.S.D.J., referred the motion to the Undersigned. No oral argument was heard. Fed. R. Civ. P. 78(b). For the reasons that follow, Defendant's motion to transfer is **granted**, and the case is transferred to the United States District Court for the Southern District of Florida.

## BACKGROUND

Plaintiffs Platinum Partners Value Arbitrage Fund, L.P. ("Platinum"), Centurion Structured Growth LLC ("Centurion"), and Level 3 Capital Fund LP ("Level 3")

(collectively "Plaintiffs") are all Delaware limited liability financial funds with their principal places of business in New York.  (Compl., ¶¶ 5-7.)  Defendant TD Bank, N.A. is the American subsidiary of Canada-based Toronto-Dominion Bank with its principal place of business in New Jersey.  (Compl., ¶ 8.)[1]

On December 13, 2010, Plaintiffs commenced this action against TD Bank seeking to recover more than $100 million lost in the highly publicized, large-scale Ponzi scheme perpetrated by imprisoned former Florida lawyer Scott W. Rothstein ("Rothstein") through the now bankrupt Florida law firm of Rothstein, Rosenfeldt, Adler, PA ("RRA").  (Compl., ¶¶ 1-2, 36.)  The Rothstein scheme involved offering potential investors and lenders the opportunity to purchase stakes in structured settlements allegedly secured by Rothstein and RRA.  (Compl., ¶¶ 17-18.)  Rothstein would inform the investors and lenders that the settlement details were confidential, but that the settlement funds were being held in escrow accounts at a TD Bank in South Florida.  (Compl., ¶¶ 19-20.)  To put investors and lenders

---

[1] The Complaint alleges that TD Bank's principal place of business is in New Jersey. (Compl. ¶ 8.)  However, TD Bank disputes this allegation and takes the position that its "primary headquarters" are located in Maine.  (Reply Declaration of Donna M. Evans, Esq., ¶ 5.)  It further contends that its New Jersey office is its "second headquarters," which was only established following a merger with Commerce Bank in 2008.  (Id.)  A corporation can only have one principal place of business, S. Freedman & Co. v. Raab, 180 Fed. Appx. 316, 320 (3d Cir. 2006), which is "the place where the corporation's officers direct, control, and coordinate the corporation's activities." Heinz Corp. v. Friend, 130 S. Ct. 1181, 1192 (2011). The parties have not briefed the issue and the Court does not have a sufficient record to determine it.  For purposes of this motion, the Court accepts the allegation in the Complaint and assumes that New Jersey is TD Bank's principal place of business, while noting that the decision on this motion would be the same whether TD Bank's principal place of business is Maine or New Jersey.

at ease, Rothstein allowed would-be investors to review TD Bank escrow account statements to confirm the amount of settlement funds available. (Id.) In 2009, Rothstein's scheme imploded. (Compl., ¶¶ 37-39.) It was revealed that the structured settlements Rothstein had purportedly secured were essentially fictional. (Id.) In November 2009, Rothstein pleaded guilty to criminal racketeering, fraud, and money laundering, and he is presently serving a 50 year sentence in federal prison in Florida.

Plaintiffs' Complaint alleges that they loaned hundreds of millions of dollars to Florida investment firm Banyon 1030-32 ("Banyon") for the purposes of investing in the proceeds of settlements allegedly secured by Rothstein and RRA. (Compl., ¶¶ 29-31.) Plaintiffs claim they only loaned the money to Banyon to invest in the Rothstein scheme after conducting due diligence, including traveling to TD Bank in Florida to review escrow account statements. (Compl., ¶ 24.) Plaintiffs allege that, during these visits, they were provided with bank statements and cover letters generated by at least three different TD Bank employees confirming amounts contained in RRA's trust accounts. (Compl., ¶ 25.) Plaintiffs claim that these statements were false, and that TD Bank, through its representatives, negligently or fraudulently misrepresented the security of the escrow accounts and their balances, thereby facilitating the scheme and defrauding Plaintiffs into investing in the phantom settlements. (Compl., ¶ 26.)

On March 14, 2011, TD Bank filed a motion to transfer this case to the United States District Court for the Southern District of Florida. Currently pending in Florida is a raft of litigation relating to the Rothstein scheme, including seven cases involving TD

3

Bank.[2]  In some of those cases, the same parties here are involved in litigation over similar issues and claims.[3]  Defendant contends the existence of various proceedings in Florida weigh in favor of transfer.  Defendant further contends that the allegations in this case all arise out of conduct originating in Florida, and that transfer is appropriate in the interests of justice and for the convenience of the witnesses and parties involved.[4]

--------

[2] Of the seven cases pending against TD Bank, four cases are pending in federal court and three are pending in state court.  The federal cases are: Labonte, et al. v. TD Bank, N.A., 11-cv-61231 (S.D. Fla.); Platinum Estates, Inc., et al. v. TD Bank, N.A., 11-60670 (S.D. Fla.); Emess Capital, LLC v. Scott W. Rothstein, et al., 10-cv-60882 (S.D. Fla.); and Coquina Investments v. Scott W. Rothstein, et al., 10-cv-60786 (S.D. Fla.).  (Declaration of Donna M. Evans, Esq., ¶ 2.)  The state cases are: Edward J. Morse, et al. v. Scott W. Rothstein, et al, 10-24110, Complex Litigation Unit, Circuit Court for the 17th Judicial Circuit, Broward County, Florida; VRLP1, LLC v. T.D. Bank, N.A., 10-14349, Complex Litigation Unit, Circuit Court for the 17th Judicial Circuit, Broward County, Florida; and Razorback Funding, LLC, et al. v. Scott W. Rothstein, et al., 09-62943, Complex Litigation Unit, Circuit Court for the 17th Judicial Circuit, Broward County, Florida.  (Id.)  The state court litigation is consolidated before a single judge; the federal cases are not consolidated.  In addition, there are also at least two bankruptcy proceedings in which the Plaintiffs in this case have been involved, Stettin v. Centurion Structured Growth, LLC, Adv. No. 10-3802 (Bankr. S.D. Fla.) (adversary proceeding), and In re Rothstein Rosenfeldt & Adler, 09-34791 (Bankr. S.D. Fla.) (RRA Chapter 11 proceeding).

[3] For example, in one of the state court proceedings, Razorback Funding, Platinum and Centurion (Plaintiffs here) are co-defendants with TD Bank and TD Bank employee Rosanne Caretsky (an individual Plaintiffs have implicated in their Complaint in this case).  (Evans Decl., ¶ 3.)  In addition, in the same Razorback case, Platinum and Centurion have asserted an affirmative defense that they are not liable due to the acts of others, including TD Bank.  (Id.)

[4] After TD Bank's motion to transfer was filed, Chief District Judge for the District of Connecticut, Robert N. Chatigny, U.S.D.J., transferred a substantially similar case involving the Rothstein scheme from the District of Connecticut to the Southern District of Florida pursuant to §1404(a).  See Labonte v. TD Bank, 10-1335, Slip Op., (D. Conn. May 11, 2011) (submitted as supplemental authority at CM/ECF No. 19.)  Judge Chatigny concluded that TD Bank "established by clear and convincing evidence that the Southern District of Florida is a more appropriate forum for this action despite plaintiffs' preference for Connecticut."  Id. at 1.  Judge Chatigny further concluded that: "the operative facts have little to do with Connecticut, numerous third party witnesses are located in Florida, and

Plaintiffs oppose transfer.  They argue that New Jersey is TD Bank's principal place of business and a convenient forum; that the operative facts and relevant witness have not crystallized and do not support transfer; that discovery would not be easier in Florida; and that the Florida litigation is spread among various courts and judges and that there is no coordination between the pending actions, minimizing the relevance of the related pending litigation.

## DISCUSSION

### A.    Transfer Pursuant to Section 1404(a)

28 U.S.C. § 1404(a) provides federal courts with authority to transfer a case to another district "where it may have been brought," when doing so is "[f]or the convenience of parties and witnesses," or in "the interests of justice."  28 U.S.C. §1404(a).  The purpose of transfer is to "prevent the waste of 'time, energy, and money' and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.'" Ricoh Co., Ltd. v. Honeywell, Inc., 817 F. Supp. 473, 479 (D.N.J. 1993) (quoting Van Dusen v. Barrack, 376 U.S. 612, 616 (1964)).  The decision to transfer is a discretionary one.  See, e.g., Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007); Superior Oil v. Andrus, 656 F.2d 33, 42 (3d Cir. 1981) ("[A] district court has broad discretionary power under [§ 1404(a)] to transfer any civil action to

---

federal and state courts in Florida are adjudicating a number of cases arising from the same fraudulent scheme." Id.  The case was transferred despite the fact that a number of the named plaintiffs in the Labonte action had ties to Connecticut (the home forum), which, as is discussed infra, is different from the facts here.

any other district where it might have been brought.").

**B.    Adequate Transferee Forum**

The transfer statute limits the ability to transfer to a district or division where the case "might have been brought."  28 U.S.C. § 1404(a).  Another district is proper if that district would be a proper venue for the action and that forum is capable of asserting subject matter jurisdiction over the claim and personal jurisdiction over the defendants.  See Yang v. Odom, 409 F. Supp. 2d 599, 604 (D.N.J. 2006).  This case could have been bought in the Southern District of Florida.  TD Bank is a defendant in multiple actions pending in Florida relating to the same claims.  Thus, personal jurisdiction is not in dispute.   Likewise, diversity jurisdiction would also exist in Florida.

**C.    Convenience and Justice Factors**

"There is no definitive formula or list of the factors to consider when deciding a motion to transfer."  Landmark Fin. Corp. v. Fresenus Med. Care Holdings, Inc., No. 09-3689, 2010 WL 715454, at *2 (D.N.J. Mar. 1, 2010).  However, the Third Circuit has articulated certain "public" and "private" interests implicated by § 1404(a).  The private interests include: (1) the plaintiff's preferred forum as expressed by the original forum choice; (2) the defendant's preference (3) where the claim arose; (4) the convenience of the parties; (5) the convenience and availability of witnesses; and 6) the location of books and records.  See Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).  The public interests include: (1) enforceability of the Court's judgment; (2) practical considerations that

could make the trial easy, expeditious, or inexpensive; (3) the level of congestion in the respective forums, (4) the local interest in deciding local controversies at home; (5) the public policies of the forum; and (6) the familiarity of the trial judge with the applicable state law in diversity cases.  Id.

       1.     **Private Interests**

       **(i)**      **Choice of Forum**

In a Section 1404(a) analysis, a plaintiff's choice of forum receives some deference, particularly when a plaintiff has selected its home forum.  See Sandvik, Inc. v. Contintential Ins. Co., 724 F. Supp. 303, 307-08 (D.N.J. 1998).  However, the significance of this factor "'*diminishes* where the plaintiff chooses a foreign forum rather than his or her own forum,' and '*decreases even further* where the central facts of a lawsuit occur outside the chosen forum.'" Eastman v. First Data Corp., No. 10-4860, 2011 WL 1327707, at *3 (D.N.J. Apr. 5, 2011) (quoting Peiken v. Kimmel & Silverman, P.C., 576 F. Supp. 2d 654, 660 (D.N.J. 2008)) (emphases added).

Plaintiffs are Delaware entities with their principal places of business in New York.  No Plaintiffs are located in New Jersey.  Thus, by filing in New Jersey, Plaintiffs have not selected their home forum.  Likewise, the central facts of this lawsuit also occurred outside of New Jersey.  Plaintiffs' Complaint arises out of loans provided to Banyon, a Florida investment firm, to purchase stakes in settlements purportedly obtained by a Florida lawyer and his Florida law firm.  Morever, the alleged fraud involving TD Bank implicates a TD

7

Bank branch in Florida and the employees in that branch.  The only obvious connection between this case and New Jersey is the fact that TD Bank has its principal place of business in this forum.  However, TD Bank is also located in numerous states, including Florida.  The sole fact that TD Bank has its principal place of business in New Jersey does not outweigh the strong connection between Florida and the underlying facts and allegations in this case. See, e.g., Taylor v. Global Credit & Collection Corp., No. 10-1476, 2010 WL 2521758, at *3 (D.N.J. June 14, 2010).  Plaintiffs have not chosen their home forum, nor have they chosen a forum with a substantial connection to the claims in the case.  Thus, Plaintiffs' choice of forum is not entitled to much, if any, deference.

### (ii)    Where the Claim Arose – The Hub of the Activity

To determine where a claim "arose," it is necessary to look to the district in which "the contacts weigh most heavily." Hitachi Cable Am. Inc. v. Wines, No. 85-4265, 1986 WL 2135, at *4 (D.N.J. Feb. 14, 1986)); see also Sharp Elec. Corp. v. Hayman Cash Register Co., 655 F.2d 1228, 1229 (D.C. Cir. 1981).

The Complaint alleges that Plaintiffs lent money to Florida based investment companies to invest in settlements allegedly obtained by a Florida lawyer and his Florida law firm.  Plaintiffs sent representatives to TD Bank's Fort Lauderdale, Florida branch for the purposes of confirming the amount in Florida based escrow accounts.  It is allegedly due to representations of individuals at TD Bank in Florida that Plaintiffs claim they were defrauded and misled into investing in Rothstein's settlements.  Thus, the crux of the Complaint is

focused on activities that allegedly occurred in Florida. The only reference to activity in New Jersey is Plaintiffs speculation in their opposition brief that potential corporate decision-making in New Jersey could have furthered the alleged fraud by TD Bank. (Pls.' Br. 6.) Even if so, it would not outweigh the obvious connection between the allegations in the Complaint and the Ponzi scheme, which was originated and carried out in Florida.

### (iii)    Convenience of the Parties

While neither Plaintiffs nor Defendants are located in Florida, the circumstances surrounding this case show that the Southern District of Florida is a convenient and appropriate venue for this case.  TD Bank in seeking transfer to Florida obviously believes it is a convenient forum and prefers to litigate there.[5]

As to Plaintiffs, they are already actively involved in various litigations in Florida relating to the Rothstein scheme.  The existence of multiple cases in Florida, which Plaintiffs concede are "related generally" to this case, confirms that the Southern District of Florida is a convenient forum for the parties to litigate this case.  This is so whether or not this case would ultimately be consolidated with others cases already pending in the Southern District of Florida.[6]  The parties are active participants in multiple proceedings in Florida already

---

[5] While not entitled to the same deference afforded a plaintiff's choice of forum, Defendant's preference to litigate in the Southern District of Florida is a relevant factor entitled to consideration.  See Jumara, 55 F.3d at 879.

[6] Plaintiffs' point about the scattered and unconsolidated nature of the various suits against TD Bank in the Southern District of Florida is slightly more convincing in the context of analyzing the *separate transfer factor* of the interests of justice and/or judicial economy.

9

litigating the very issues in this case.  Thus, Plaintiffs' concern about having their principals travel to Florida for this case is illusory—practically speaking, they are already there.[7] Transferring this case to Florida would not cause an undue hardship.

### (iv)  Convenience to Witnesses & Access to Sources of Proof

Convenience of witnesses and access to sources of proof are important considerations in the transfer analysis.  See Teleconference Sys. v. Proctor & Gamble Pharm., Inc., 676 F. Supp. 2d 321, 331 (D. Del. 2009).  It is necessary to identify the claim between the parties, "in order to evaluate what proof is required for plaintiff's cause of action and any potential defenses to it."  Newhall v. Chase Home Fin., LLC, No. 10-2749, 2010 WL 4387517, at *5 (D.N.J. Oct. 28, 2010) (citing Van Cauwenberghe v. Biard, 486 U.S. 517, 528 (1988)).  In support of transfer, the moving party should identify relevant witnesses and the general nature of their testimony.  See, e.g., Plum Tree, Inc. v. Stockment, 488 F.2d 754, 757 n.2 (3d Cir. 1973).

Here, the claims between the parties and anticipated proofs and witnesses seem clear. Indeed, a preview of the likely arguments to be made and the necessary witnesses is already available from even a cursory glance at the various pending Florida litigations. Defendants have submitted a declaration that certifies that "[m]ost, if not all, of the non-party witnesses

_____

However, the mere existence of the related suits in Florida shows that the parties would not be inconvenienced by litigating in the Southern District of Florida.

[7] The convenience of counsel is not a proper consideration in the transfer analysis. See Solomon v. Cont'l Am. Life Ins. Co., 472 F.2d 1043, 1047 (3d Cir. 1973).

10

whom TD Bank expects to be deposed . . . are located in Florida." (Declaration of Donna M. Evans, Esq., ¶ 4.)   The declaration proceeds to identify approximately 50 non-party witnesses located in Florida, and generally identifies the knowledge these witnesses possess and why their testimony is important to the issues in this case. (Id.) Those identified include: (1) Scott Rothstein; (2) various officers, attorneys and employees of the RRA law firm; (3) multiple investors in Florida; (4) TD Bank employees in Florida; (5) and approximately 20 other non-party witnesses located in Florida that are affiliated with a number of financial and investing firms. (Evans Decl. ¶ 4.) Defendant asserts that many of these witnesses will be crucial.  In particular, Defendant identifies six non-party witnesses all located in Florida who it "expects will testify to Rothstein's Ponzi scheme and the falsification of TD Bank Documents by RRA employees or accountants . . . ." (Id.)

At this stage of the proceedings, the Court is not able to tell what witnesses will ultimately be called or the importance of their testimony.  It appears likely that it will be necessary to depose some of these individuals and/or call them as witnesses at trial.  It is also reasonable to conclude that some of their testimony may bear significantly on issues in this case.  This possibility outweighs Plaintiffs' concern that their principals would be forced to travel to Florida, especially since Plaintiffs are already involved in the Rothstein litigation in Florida. Thus, it is substantially more likely that the convenience of the witnesses would

be supported by transfer to Florida.[8]  This factor weighs heavily in favor of transfer[9]

### (v)    Availability of Compulsory Process

The availability of compulsory process has been referred to as the most important

factor in a transfer analysis.  See, e.g., In re Consol. Parlodel Litig., 22 F. Supp. 2d 320, 324

(D.N.J. 1998); Affymetrix v. Synteni, Inc., 28 F. Supp. 2d 192, 203 (D. Del. 1998).   In

deciding a motion to transfer, there is some distinction to be drawn between party and non-

party witnesses.   See Nat'l Prop. Investors VIII v. Shell Oil Co., 917 F. Supp. 324, 329

(D.N.J. 1995).  Party witnesses arguably carry less weight because they are presumed to be

willing to testify in either forum, even if it is inconvenient.  See Liggett Group, Inc. v. RJ

Reynolds Tobacco Co., 102 F. Supp. 2d 518, 534 n.19 (D.N.J. 2000).  However, non-party

witnesses, on the other hand, may be compelled to attend only by the subpoena power of

federal courts.  See Fed. R. Civ. P. 45(b)(2).  A forum's inability to compel the attendance

of witnesses at trial is an important factor weighing in favor of transfer.  See, e.g., LG Elecs.,

---

[8] In transferring the Labonte case to the Southern District of Florida, Judge Chatigny found that the "convenience of witnesses weighs heavily in favor of transfer." Labonte, Slip. Op. at 6.

[9] The Court is not persuaded that access to sources of proof, in the form of books and records, would be more convenient in Florida.  As Plaintiffs note, it appears many of the documents that would be relevant in discovery have already been produced to TD Bank in other litigations, including the bankruptcy proceedings.  Moreover, the physical location of books and records in a foreign forum is "of little weight" when electronic discovery is involved or when documents can be "transported and/or easily photocopied." Eastman, 2011 WL 1327707, at *4.  Thus, the Court affords no consideration to the location of sources of proof in its transfer analysis.

Inc. v. First Int'l Computer, Inc., 138 F. Supp. 2d 574, 590-91 (D.N.J. 2001).

Defendants have identified numerous non-party witnesses that reside in Florida and are not subject to compulsory process in New Jersey, including:  RRA officers, partners, and affiliates; accounting professionals; principals in multiple financing companies; and various individual witnesses, including those that TD Bank represents would be likely to provide information relating to "falsification of TD Bank Documents by RRA employees or accountants . . . ." (Evans Decl., ¶ 4.)  In addition, Mr. Rothstein is in federal prison in Florida, and is an obvious potential witness in this case.  In contrast, Plaintiffs have not identified a single witness that would be unavailable if this case would be transferred to Florida.  The inability to compel the attendance of potentially important witnesses at trial in New Jersey is a compelling reason weighing strongly in favor of transfer.

     **2.**    **Public Factors**

        **(i)**    **Local Interest**

New Jersey has no real public interest in hosting this dispute.  None of the Plaintiffs are located in New Jersey.  The operative facts of this case make clear that the overwhelming public interest in this case is in Florida.  The scheme was perpetrated by a Florida lawyer through his Florida based law firm.  The alleged wrongs committed by TD Bank supposedly occurred in a Florida branch involving employees within that branch.  It is clear that Florida has a substantially greater interest in the disposition of this case than New Jersey.  See, e.g., Lacey v. Cessna Aircraft Co., 862 F.2d 38, 48 (3d Cir. 1988); Tischio v. Bontex, Inc., 16 F.

Supp. 2d 511, 526 (D.N.J. 1998).  Moreover, absent an identified public interest in this forum, courts should not impose jury duty on the citizens of New Jersey.  See Ferens v. John Deere Co., 494 U.S. 516, 529-30 (1990) ("Jury duty is a burden that ought not to be imposed upon the people of the community with no connection to the litigation."); see also Tuoni v. Electronic Device Discovery, Inc., No. 10-2235, 2010 WL 5441656, at *6 (D.N.J. Dec. 23, 2010).

(ii)     **Interests of Justice and the Florida Litigations**

Transfer is often meant as a time saving device, for the parties and for the Court.  See Cont'l Grain Co. v. Barge FBL-585, 364 U.S. 19, 26 (1960) (transfer is designed to prevent "wastefulness of time, energy and money").  Thus, the transfer of a civil action to another district where similar cases are already pending "serves not only private interests but also the interests of justice."  CIBC World Mkts. v. Deutsche Bank Sec., Inc., 309 F. Supp. 2d 637, 651 (D.N.J. 2004); Supco Auto. Parts, Inc. v. Triangle Auto Spring Co., 538 F. Supp. 1187, 1192 (E.D. Pa. 1982) ("It is well-settled . . . that the pendency of a related case in the proposed transferee forum is a powerful reason to grant a motion for a change of venue.").  Likewise, local dockets should not be "clogged" with cases that have no connection to the forum.  ESP Shibuya Enter., Inc. v. Fortune Fashion Indus., No. 08-3992, 2009 WL 1392594, at *4 (D.N.J. May 15, 2009).

Here, there is substantial and protracted litigation pending in Florida.  There are seven lawsuits pending against TD Bank in Florida courts that relate to the Rothstein scheme.

14

Three of the cases are pending in Florida state court before a single judge and involve the same parties present in this case.  However, more persuasive than similar pending state court litigation is the pendency of four actions in the United States District Court for the Southern District of Florida, which Plaintiffs concede are "related generally" to this case.  It is true, as Plaintiffs repeatedly stress, that those cases are not consolidated and are currently proceeding separately.  Nevertheless, TD Bank speculates that if this case is transferred to the Southern District of Florida, it will likely be assigned to one of the judges handling the pending cases there pursuant to the Southern District of Florida's Local Rules.  While not certain, this is within the realm of possibility.

The existence of the pending related litigation on the same subject as this case weighs in favor of transfer.  Whether this case would be consolidated with another Rothstein-related matter pending in Florida is a decision for the transferee court; however, having this case transferred to Florida does at least present the opportunity for coordinated discovery schedules and proceedings if the district court in Florida were so inclined.  And, at a minimum, the concept of keeping these cases in a single district has value for the parties and witnesses in terms of coordinating counsel and travel and minimizing inconvenience.  In short, this Court agrees with Judge Chatigny, who, in rejecting the same arguments Plaintiffs advance here, found that "plaintiffs' concerns about consolidation and the status of discovery in the other cases do not override the factors favoring transfer."  Labonte, 10-1335 (D. Conn.), Slip. Op. at 11.

\*     \*     \*

All of the relevant factors in this case, in particular the convenience of the witnesses, the availability of compulsory process, and Florida's local interest in the Rothstein scheme, weigh in favor of transfer of this case to the United States District Court for the Southern District of Florida.

## **CONCLUSION**

For the reasons stated above, Defendant's motion to transfer [CM/ECF No. 11] is **granted**. An appropriate Order will be entered. The Clerk's Office shall take no action on transfer of this case for 14 days. <u>See</u> L. Civ. R. 72.1(c)(1)(C).

s/Mark Falk
**MARK FALK**
**United States Magistrate Judge**

**Dated: August 2, 2011**

16