UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-61835-CIV-DIMITROULEAS/SNOW

PLATINUM PARTNERS VALUE
ARBITRAGE FUND, L.P., CENTURION
STRUCTURED GROWTH L.L.C., and LEVEL
3 CAPITAL FUND L.P.,

      Plaintiffs,

vs.

TD BANK, N.A.,

      Defendant,
_____/

## ORDER GRANTING IN PART DEFENDANT'S MOTION
## TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

THIS CAUSE is before the Court upon Defendant TD Bank, N.A.'s Motion to Dismiss Plaintiffs' Amended Complaint [DE 60], filed on April 2, 2012. The Court has carefully considered the Motion, Plaintiffs' Response [DE 68], and Defendant's Reply [DE 71], and is otherwise fully advised in the premises.

### I.    BACKGROUND

The Plaintiffs, Centurion Structured Growth, Platinum Partners Value Arbitrage Fund, and Level 3 Capital Fund (collectively, "Plaintiffs") are investment funds that participate in the business of asset-backed lending.[1] In other words, they lend money in exchange for a promise to repay coupled with security interests in assets to help ensure repayment of the loan.

---

[1] Well-pled allegations of fact in the Complaint are taken as true for the purposes of a motion to dismiss; conclusory allegations, however, are not. *Aschroft v. Iqbal*, 556 U.S. 662, 664 (2009). The Court makes no findings of fact through this Order.

Plaintiffs loaned millions of dollars to Banyon Funding, LLC; Banyon Investments; and Banyon Resources (collectively, "Banyon"). Plaintiffs' credit agreements[2] with Banyon required Banyon to use Plaintiffs' money to purchase stakes in structured settlement payments held in escrow accounts managed by former South Florida attorney Scott Rothstein. "Structured settlements" arise when a party settles a lawsuit, promising to pay out the settlement amount over a period of time rather than in one lump sum. *See* 26 U.S.C. § 5891(c)(1). Banyon executed Promissory Notes ("Notes") for the Plaintiffs, to be repaid in accordance with the terms and provisions of the credit agreements. The credit agreements and their corresponding Notes bore high interest rates at 22%-50% per annum. Plaintiffs also received a security interest in the rights to the income stream that the structure settlements generated.

In deciding to take a chance on Rothstein's structured settlement accounts, Plaintiffs did not make a blind decision. Plaintiffs performed due diligence by examining the integrity of the settlement accounts Rothstein held at Defendant TD Bank, N.A. ("TD Bank"). Rothstein had told Plaintiffs that they could obtain information about the settlement accounts through TD Bank. They visiting TD Bank branches, met with TD Bank employees, and reviewed documents provided by TD Bank's employees. TD Bank employees assured Plaintiffs of the safety of their investments, vouching for the integrity of Rothstein and the legitimacy of the settlement

---

[2] The Plaintiffs cite to the credit agreements throughout their Amended Complaint; however, they did not attached them to the Amended Complaint. TD Bank in its Motion to Dismiss attached the Plaintiffs' credit agreements. A document outside the four corners of the complaint may still be considered at the motion to dismiss stage if it is central to the plaintiff's claims and is undisputed in terms of authenticity. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Because the credit agreements are central to Plaintiffs' claims and there is no dispute regarding their authenticity, the Court shall consider them.

accounts. TD Bank provided documents indicating the accounts were locked so money could not be diverted and also provided statements and letters verifying account balances.

Relying on TD Bank's representations, Plaintiffs loaned money to Banyon to be invested in Rothstein's settlements. Unfortunately, Rothstein's supposed structured settlement escrow accounts were part of a Ponzi scheme. There were no escrow accounts holding the proceeds of structured settlements, or if there were, they were seriously overstated. The information TD Bank's employees had provided to the Plaintiffs was false and the reports and the balance verifications were fraudulent. The rights to fictitious income streams were worthless.

Because the income streams were worthless, Banyon lost Plaintiffs' money and was unable to pay it back. The collateral was worthless as well. Plaintiffs in this litigation are not suing Banyon to enforce a debt, nor Rothstein for fraud, but rather are suing TD Bank for its role in the Ponzi scheme. The Plaintiffs allege that TD Bank, through several officers and employees, actively participated in Rothstein's racketeering activity. The Plaintiffs allege seven causes of action against TD Bank. Count I alleges violations of the Racketeering Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1961, *et seq.* and Count II alleges a conspiracy to violate the RICO Act. Counts III through VII are state law tort claims.

## II.   STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a motion to dismiss will be granted if the plaintiff fails to state a claim for which relief can be granted. According to Rule 8(a)(2) of the Federal Rules of Civil Procedure, a claimant must only state "a short and plain statement of the claim showing that the pleader is entitled to relief." When considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all factual allegations in the complaint. *See*

*Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

### III.   DISCUSSION

TD Bank seeks dismissal on a number of grounds. Two are sufficient to dispose of this case. First, TD Bank asserts that a portion of the Private Securities Litigation Reform Act ("PSLRA"), codified at 18 U.S.C. § 1964, bars the Plaintiffs' civil RICO claims. Second, TD Bank suggests that the Court should decline to exercise jurisdiction over the remaining state law claims. The Court agrees with both arguments. Because these issues dispose of this case, the Court will not address the remaining arguments.

**A.    Civil RICO Claims**

The Plaintiffs, in Counts I and II of their Amended Complaint, allege that TD Bank violated § 1962(c)-(d) of the RICO Act by knowingly participating in and furthering Rothstein's Ponzi scheme. TD Bank believes that the Plaintiffs' civil RICO claims are predicated on actions TD Bank took in connection with the purchase or sale of securities. Plaintiffs may not bring civil RICO claims based upon predicate acts that would be actionable as fraud in the purchase or sale of securities. *See* 18 U.S.C. § 1964(c) ("Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court ..., *except that no person may rely upon any conduct that would have been*

*actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.*" (emphasis added)).

Therefore, the Court must determine whether TD Bank's actions would be actionable as fraud in the purchase or sale of securities. Even more fundamentally, the Court must determine whether Plaintiffs obtained securities at all. A security is "any note . . . debenture, evidence of indebtedness, certificate of interest or participation in any-profit sharing agreement . . . investment contract . . . or, in general, any interest or instrument commonly known as a 'security' ...." 15 U.S.C. § 77b(a)(1). This definition is broad because Congress intended to regulate the "countless and variable schemes developed by those who seek the use of the money of others on the promise of profits." *SEC v. W.J. Howey Co.*, 328 U.S. 293, 299 (1946). The definition of "security" is "sufficiently broad to encompass virtually any instrument that might be sold as an investment." *Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990).

Plaintiffs' transactions with Banyon are evidenced by notes. Because Plaintiffs obtained notes, and securities are defined to include "any note," at first blush, it would seem that Plaintiffs obtained "securities" through their transactions with Banyon. However, the Supreme Court has emphasized that Congress did not intend to provide a broad federal remedy for all fraud, so courts should be sensitive to whether the instruments are "*investments*, in whatever form they are made and by whatever name they are called." *Id*. Notes in particular are susceptible of being used in ways that are not investments, so the "any note" language of §77b(a)(1) is not interpreted literally. *Id.* at 62-63. Thus, the Court cannot readily conclude that simply because Plaintiffs received notes, they must have received securities.

The Supreme Court has provided guidance in deciding whether a note is an "investment." There is an initial presumption that a note is a security. *Id.* at 65. That presumption may be rebutted if the note falls within six classes of non-investment notes: (1) those formed in contracts of consumer financing, (2) those secured by a home mortgage, (3) those short-term notes secured by a lien on a small business or its assets, (4) those evidencing a "character" loan to a bank customer, (5) those short-term notes secured by an assignment of accounts receivable, or (6) those formalized by an open-account debt incurred in the ordinary course of business especially if collateralized. *Id.* at 64-65. Applying this guidance, this Court begins with the presumption that Plaintiffs' Notes are securities, because they are denominated as notes. In addition, the Court concludes the notes Plaintiffs received do not match any of these exceptions.

Even if a note is not exactly one of the listed exceptions, it still may not be a security if the note bears a "family resemblance" to a non-investment note. *Id.* at 65. First, the Court must consider the motivations of the parties. *Id.* at 66. If the note issuer's desire is to raise money for the general use of its business or to finance substantial investments and the buyer is interested primarily in the profit, the note is likely a security. *Id.* On the other hand, if the note is exchange for the purchase and sale of a minor asset or consumer good or to correct for cash-flow difficulties, the note is less likely a security. In this case, the Plaintiffs were primarily interested in the profits generated by the much-higher-than-market-average interest rates Banyon promised to pay, and Banyon was interested in Plaintiffs' money so that it could invest in Rothstein's structured settlements. *See SEC v. Chemical Trust*, 2000 WL 33231600, at *8 (S.D. Fla. Dec. 19, 2000) (finding rate of return, which was substantially higher than what most market investments would have yielded, indicated that the note qualified as a security). Two of the three

Plaintiffs' Notes also included an equity distribution component that was tied to the profitability of Banyon's investment. The first consideration reinforces the presumption that Plaintiffs' Notes are securities.

The second consideration is whether there was a distribution plan for the instrument to facilitate common trading for speculation or investment. *Reves,* 494 U.S. at 66. This consideration cuts against the Notes being securities. The Notes were only issued to the three Plaintiffs. The Court observes, however, that the Notes were assignable. On balance, however, this factor tends to show that the Notes were not securities. This is not fatal to the Notes being securities. *See, e.g., Stoiber v. SEC*, 161 F.3d 745, 752 (D.C. Cir. 1998) ("Admittedly, the plan of distribution in part signals that the notes might not be securities, but that factor by itself is not dispositive."); *Trust Co. of La. v. N.N.P. Inc.*, 104 F.3d 1478, 1489 (5th Cir. 1997) ("The fact that there was no public distribution is not fatal to [plaintiff]'s securities laws claims."); *Nat'l Bank of Yugoslavia v. Drexel Brunham Lambert, Inc.*, 768 F. Supp. 1010, 1015-16 (S.D.N.Y. 1991) ("A debt instrument may be distributed to but one investor, yet be a 'security.'").

The third consideration is what the reasonable expectations of investing public would be. *Id.* at 66. There is no meaningful investing public to consider in this case, because only three Notes were issued, one to each Plaintiff. This consideration weighs against the Notes being securities.

The final consideration is whether there are factors such as a regulatory scheme that significantly reduce the risk of the instrument. *Id.* at 67. Plaintiffs are not federally regulated, everyday banks that issue loans. *Cf. id.* at 69 (indicating that federal regulation would reduce risk). Plaintiffs' loans to Banyon were not guaranteed by the federal government. The principal

7

of Banyon and his wife did issue personal guarantees, which reduced the risk somewhat.  The loans were also collateralized, reducing the risk as well.  *Cf. id.* (suggesting that collateral would reduce the risk).  The Court notes that the collateral, however, was the investment itself, rather than a more risk-neutral item such as a corporation's physical assets. The Court is persuaded that on the whole this fourth element swings in favor of the Notes being securities.  Plaintiffs gave large sums of money in an unregulated market for investment in an atypical type of asset subject to uncertain risks.  The personal guarantee of the Banyon's principal and his wife and the value of collateral in an unusual investment are not sufficient to make the economic reality of the transaction unlike an investment.

Beginning from the presumption that Plaintiffs' Notes are securities, having found that they do not match any express exception, and further finding that the economic reality considerations are in equipoise, the Court concludes the Plaintiffs' Notes are securities.  *See id.* at 67 ("A note is presumed to be a 'security,' and that presumption may be rebutted only by a showing that the note bears a *strong resemblance* (in terms of the four factors we have identified) to one of the enumerated categories of instrument.")

Having found that Plaintiffs' transactions yielded securities, the Court must now determine whether TD Bank's conduct would have been actionable as fraud in the purchase or sale of securities such that the PSLRA's RICO bar applies. To be "actionable as fraud in the purchase or sale of securities," the fraud need only be done "in connection with the purchase or sale of securities." *See SEC v. Zandford*, 535 U.S. 813, 820 (2002).  The fraud cannot be an independent event from the purchase or sale; it must "coincide." *Id.*  Plaintiffs' Amended Complaint repeatedly alleges that TD Bank committed fraud to induce Plaintiffs to purchase

8

Rothstein's securities. *See* [DE 54 ¶ 67-93]. TD Bank's conduct coincided with the securities transactions and was not independent. Therefore, the Court concludes that TD Bank's conduct would have been actionable as fraud in the purchase or sale of securities, so the PSLRA's bar applies to Plaintiffs' RICO claims.

The Court notes that the bar applies even though Plaintiffs' allegations include RICO predicate acts that ostensibly do not mention securities fraud. The PSLRA bars actions for damages relating not only to securities fraud per se, but also to the predicate acts of mail fraud or wire fraud done in connection with the purchase or sale of securities. *Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 165 F. Supp. 2d 1345, 1356 (S.D. Fla. 2001); *Eagletech Commc'ns Inc. v. Citigroup, Inc.*, No. 07–60668–CIV, 2008 WL 3166533, at *9 (S.D. Fla. June 27, 2008). Plaintiffs allege RICO liability on three different predicate acts: wire fraud under 18 U.S.C. § 1343, money laundering under 18 U.S.C. §§ 1956-57, and violation of the National Stolen Property Act, 18 U.S.C. §§ 2314-15. The wire fraud claim based on conduct involving the sale or purchase of securities is barred by the PSLRA. The other two bases fully incorporate all of the allegations relating to the conduct giving rise to the wire fraud claims. [DE 54 ¶¶ 132, 142]. Because this same conduct "would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962" had it been pled under the wire fraud theory, and because the PSLRA should be interpreted broadly to prevent end-runs due to artful pleading, *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 274 (2d Cir. 2011), these alternative bases for RICO liability are also barred by the PSLRA. *See Bald Eagle Area Sch. Dist. v. Keystone Financial, Inc.,* 189 F.3d 321, 329-30 (3d Cir. 1999) (rejecting argument that though some acts of bank and wire fraud were securities fraud and others necessarily were not, because

9

the court reasoned that the PSLRA barred all fraud done "in connection with" securities fraud so individual events could not be stripped away); *see also Adams v. Rothstein Slip Copy,* No. 11-61688, 2012 WL 1605098, at *5 (S.D. Fla. May 8, 2012) ("However, the PSLRA bar applies regardless of whether a plaintiff can or does plead a cause of action under the securities laws.").

Because Plaintiffs' loans to Banyon created securities, and Plaintiffs are suing TD Bank for conduct that would be actionable as security fraud or wire fraud, 18 U.S.C. § 1964(c) precludes Plaintiffs from brining federal RICO claims against TD Bank. This Court is not alone in reaching this conclusion. *See Adams*, 2012 WL 1605098 (barring RICO claims against TD Bank arising from the same conduct complained of in this case). TD Bank's Motion to Dismiss is granted, and Counts I and II of Plaintiffs' Amended Complaint will be dismissed with prejudice.[3]

**B.    Supplemental Jurisdiction Over Remaining State Law Claims**

All remaining claims are state law tort claims and it does not appear that there is diversity jurisdiction between the parties. "[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988); *see also* 28 U.S.C. § 1367(c)(3) (allowing for the dismissal of claims over which the court only has supplemental jurisdiction). In deciding whether to dismiss the state claims, this Court can consider judicial economy, convenience, fairness, and comity. *See Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1353 (11th Cir. 1997). These interests suggest

---

[3] The PSLRA bars RICO conspiracy claims just as it does direct RICO violations. *See, e.g.*, *MLSMK*, 651 F.3d at 273.

that the remaining claims should be dismissed without prejudice so that the Plaintiffs may pursue them in state court, if desired.

However, the pleadings are not clear on the issue of diversity. The Amended Complaint bases jurisdiction on federal question jurisdiction due to the RICO claims. The Plaintiffs' did not plead diversity jurisdiction in the alternative. Therefore, the Plaintiffs' Amended Complaint lacks sufficient information to make a determination on whether there is diversity jurisdiction between the parties. Before dismissing this action in its entirety, the Court will allow the Plaintiffs to demonstrate that this Court should exercise diversity jurisdiction as an independent basis for subject matter jurisdiction.

### IV.   CONCLUSION

Based upon the forgoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant TD Bank's Motion to Dismiss Plaintiffs' Amended Complaint [DE 60] is **GRANTED IN PART**;

2. Counts I and II are **DISMISSED WITH PREJUDICE;**

3. On or before August 13, 2012, Plaintiffs may file an addendum to their Complaint demonstrating a sufficient basis for diversity jurisdiction. Failure to do so will result in the Court dismissing without prejudice Counts III, IV, V, VI and VIII.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Broward County, Florida, this 6th day of August, 2012.

WILLIAM P. DIMITROULEAS
United States District Judge

Copies provide to:

Counsel of Record

12